Will you call the next case, please? 3-11-0643, Thomas G. Baker, et al. Ecclesiastes by Stephen Morgan v. Victoria J. Harper, full amount of treasure, accounted by Christopher Shearer. Mr. Shearer. May it please the Court. Counsel. Good morning. My name is Chris Shearer. I'm with the Springfield firm Giffen, Winning Cohen & Bo Davis. My firm has a contract with the State's Attorney Appellate Prosecutor's Office to help out with property tax issues. And on behalf of... My sympathies. It's rather enjoyable. Thank you. Here on behalf of Fulton County State's Attorney John Clark is Assistant Attorney Justin Jokums. So we're here today to talk about real estate taxes, which necessarily requires this Court to interpret provisions of the Property Tax Code. Now, as a general matter, the Property Tax Code is a comprehensive statute that regulates the assessment and collection of taxes. The way it's written, it's in terms of power. It talks about who has power, when they have power, and what power they have. Under Section 16-55, the Board of Review has power once a taxpayer files a timely written complaint with the Board of Review to, quote, review the assessment and correct it as appears to be just. The Board of Review is also granted, quote, full power over the assessment of any person and may do anything in regard thereto that it may deem necessary to make a just assessment. At the next level, Section 23-10 grants the Circuit Court power, quote, to hear and determine all objections specified to the taxes, assessments, or levies in question, but that power is conditioned on the taxpayer filing a complaint with the Board of Review in almost every case. Section 23-10 specifically says that the objection to an assessment for any year shall not be allowed by the court, however, if an administrative remedy was available by complaint to the Board of Appeals or Board of Review under Section 16-55 or Section 16-115, unless that remedy was exhausted prior to the filing of the tax objection complaint. Here, in this case, taxpayers did not exhaust their administrative remedies with the Fulton County Board of Review. Despite the clear and unambiguous language, the trial court determined that that provision requiring the exhaustion of administrative remedies was inapplicable based on the facts of this case. The facts of the case are summarized as follows. In 2008, the taxpayers, in this case, purchased 163.61 acres of a larger 225.39 acre tract of farmland. After that division, a new tax parcel was created. This is required under the Property Tax Code. The new parcel was classified and assessed as rural, vacant, non-farm for the 2009 tax year. 2009 was the first tax year that this particular property had a PIN number. Sending the notice out to the taxpayer, the local assessment officials in Fulton County indicated that the real estate, the new parcel, was going to be assessed at a value of $165,250. Can I stop you there? Yes. And remember that I stopped you at the point the notice went out in late 2009. Plaintiffs or the taxpayers bought the property in 2008. Correct. The property was reclassified in 2009 before that notice went out in late 2009. How do they challenge the reclassification? We haven't really gotten into those issues. The complaint alleges... And that's a fair answer. That there was... If I can have a moment. The complaint in paragraph 7 alleges that the property... Was reclassified. Was reclassified. But the trial court didn't reach the issue of whether it was properly reclassified. Correct. The trial court only ruled on the sufficiency of the notice that was sent out in late 2009. Correct. All right. The trial court's decision focused solely on the content and substance of the notice. Is there a possibility of remanding it for the trial court to look at the issue of reclassification? If the court ultimately determines that the trial court properly exercised jurisdiction, yes. That's our alternative argument that summary judgment was inappropriate. Why wouldn't the court have jurisdiction to decide that issue of reclassification? Because an issue of classification is one of the subjects that's properly presented to the Board of Review. Which taxpayers in this case did not do. Although they received the notice that indicated that they had the right to file a complaint with the Fulton County Board of Review within 30 days after publication of their township notice. They failed to do that. They rested on their rights. And rather than file a complaint with the Board of Review, they filed a complaint in circuit court challenging all these issues. Okay. I'll leave you alone. Thank you. We left off that notice. The complaint that they filed on August 6, 2010, and just for point of reference, 2009 taxes aren't billed until 2010. It's based on a valuation date of January 1, 2009. It goes through the cycle. The local taxing districts base their levies on that assessment, which is generally in the latter part of 2009. So 2010 was when the actual tax bills were sent out based on the levies and the assessments that were made in 2009. Because I'm not a contract tax attorney. Never was. The bill went out to the taxpayers on May 5, received according to the appendix, on May 5, 2010, but their complaint was not filed until August of 2010? That sounds correct. I mean, that's more than 30 days after the bill, but what's the timing for a tax objection complaint once you get the bill? Section 2310 or 2305, I can't remember which. I believe the time frame is 120 days following the final penalty date. All right. So the complaint was timely based on the bill. I believe that's correct. I typically look at that issue at the very first instance. My recollection is after talking to the supervisor of assessments was that we determined that the tax objection complaint was timely. All right. Thank you. Among the issues that they raised in their complaint that was filed in August 2010 were improper classification, that it should not have been classified as other land, and also that it should have continued to receive the preferential farmland assessment. It further claimed that there was, quote, defective notice due to the failure to indicate the prior year assessed value, the percentage change from the previous assessed value to the current assessed value, that the current year assessed value was being expressed as dollars, and the reason for an increase in value. They further allege in their complaint, quote, that as a result of said deficiencies, the plaintiffs did not recognize the purpose, intent, or magnitude of any proposed change, and therefore did not appeal the assessment notice. So already in their complaint, they're anticipating that there might be an issue as to jurisdiction, so they addressed that issue in the complaint and tried to justify their failure to file with the Board of Review. So as anticipated, the defendant filed a motion to dismiss alleging that the circuit court lacked jurisdiction to entertain their complaint due to their failure and admitted failure to exhaust administrative remedies under Section 2310 of the Property Tax Code. And they responded that it was not applicable because the taxing authorities deliberately fixed values contrary to known values. Let me ask you, I mean, at the end of the day, this turns on, the threshold issue here is, was that notice correct? Correct. The notice, you know, in addition to the zeros and the 165 over there, it shows the reclassification, but it says purpose and it says reassessment down there, right? Correct. And it doesn't say reclassification. Is that any import? That notice, while it shows what the classification is, it doesn't tell them that this land is being reassessed, but it doesn't say it's being reclassified. Does that affect the validity of the notice? I don't believe so. For the same reasons that we argue in our brief, those two sections that are sort of the savings clauses, that no error or informality or any improper notice isn't going to affect the validity of the taxes. The reassessment came as a result of the fact that it was a larger tax parcel and divided into two separate parcels so that two new tax parcels had to be created. That's what inspired the reclassification. Okay, but it also inspired the reassessment. You're telling me you're reassessing it, but the notice doesn't tell them it's being reclassified. And it was the reclassification, in fact, that really drove this tax bill through the ceiling compared to what it was. Is that fair? That's entirely accurate, yes. The reclassification was apparent based on the level of the assessment. Had it received a preferential farmland assessment, the assessment would have been much lesser than the $165,250 that were indicated. How many acres is this? 163.61. Okay, so is farmland assessed at less than a third? Farmland is assessed at less than a third. There's a complex formula based on productivity tables and equalization factors, and it's slightly above my pay grade, quite frankly. All right, but I'm saying, you know, if the taxpayer gets a notice, you know, gee, is this something I need to respond to? It seemed to me that the assessor's notice tells them they're being reassessed. Correct. All right, we're being reassessed. You know, you buy a house and some tax people are on top of that. Every time there's a sale, they reassess based on the – they say that must be the fair market value, you just paid that for it, so we're reassessing it. But here there's a reclassification, which was really the underlying thing that drove their tax bill from a few hundred to 15,000, and yet there's no mention of that. Well, I think the reassessment is probably a more accurate description. The reclassification would presume that it should carry over from the previous classification that the larger parcel had. I'm not sure that that's necessarily true. We didn't get far enough in this litigation to figure out what the proper classification of the subject acreage was. We do know that the larger 225-acre tract was classified as farmland. But how could the assessor have assessed it at that value without determining classification first? Because the tax is going to be dependent on whether or not it's classified as farmland, because then the Farmland Assessment Act kicks in, which is going to determine the taxes. So you sort of need to know the classification and put that notice out first, don't you? I don't think so. This is a new tax parcel. This is the first time this particular property is being taxed. Well, you can't have it both ways. The underlying ground has been taxed before as a classification of farm ground. And just because it's cut into two smaller parcels would not necessarily indicate that the classification has to change. Farm parcels, 20 acres, 25 acres, 40 acres, an entire section, the size itself isn't determinative. So when the assessor goes out, can't you say, well, we've created now a new tax parcel, so it's not going to be farm. Isn't there other criteria they have to use? Doesn't that have to come first? Well, the flip side of that is the taxing authorities don't automatically presume that the prior classification should carry over. I mean, we don't know how much was wooded area, what was actually being farmed, what the crops were. And in order to receive a preferential farmland assessment, it has to be demonstrated that that particular land had been used as a farm for the two prior tax years. I'll show you in a few minutes. And again, at this stage of litigation in which the trial court granted summary judgment, we weren't able to get into those issues, so we don't know whether the land was actually farmed. Isn't the assessment of $240 as farm ground indicative that at least in one previous tax year it had been classified as farm property? Correct, for the previous owner, correct. But as far as this land and these owners, we don't know if it was principally a wooded area that was purchased from a larger farming tract. For example, if the remaining acres was what actually had corn or soybeans or whatever on it, and then the property that was purchased was just largely wooded area to be used for recreation purposes, to be used for hunting, and that's where we get into larger issues of the wooded assessment transition law that went into effect in 2007, which I think has played an undercurrent in what actually happened here. But again, we weren't able to fully develop those issues based on the way the trial court disposed of this case. Thank you. Very briefly, both taxpayers and circuit court relied principally, if not entirely, on the two holdings of the Supreme Court in Jennings and Foxworthy. Both of those cases dealt with a lack of notice. Here we have simply a deficiency in notice. And I want to refer the court to, as cited in our brief, the case of Schlenz v. Castle. It's a 1981 Supreme Court case that it talked about, I think it was in response, it followed Foxworthy. And after Foxworthy, the General Assembly adopted some curative legislation to mitigate the effect of the Foxworthy holdings, so that basically it retroactively validated improper published notices. And in that case, the Supreme Court characterized the notice requirements, the published notice requirements, as defects that are procedural irregularities in the assessment process. That the lack of timing, they minimized the significance of, although recognizing that the imposition of those requirements need to be complied with, that it's up to the legislature to determine how important those notice requirements are. I'd be happy to answer any further questions. And you'll have a few minutes in rebuttal, I suspect. Yes, thank you. Mr. Morgan. Good morning. Good morning. May it please the court, counsel, my name is Steve Morgan, I'm the attorney for the Applelees, Tom Sheridan, Mike Baker. If you read our briefs, you probably wonder if we're arguing the same case, because we're arguing different issues. The appellant has argued that we're required to exhaust our administrative remedies, and they've made a corollary argument that we don't fit within one of the exceptions, which is called the unauthorized by law exception. And I agree with that, we don't fit within the exception, but our argument is we're not subject to the exhaustion of administrative remedies, for the reason that the notice in this case was defective. How? The notice was defective for a number of reasons. If you look at the notice, when it indicates what the prior assessment was, it has a zero. It has an amount. And the amount is zero. Let's back up. The statute specifically requires what needs to go in this notice. And one of the things that's required is the prior year assessed value. A second thing is the current year, or what's proposed, and the purpose of that is so we can compare. That's obvious. Okay, so let me stop you there. It was shown not blank, but as zero, and it should have read 240 or something slightly less. Is that right? There's a number of things that they could have done, and we wouldn't be here. Okay, so I'm the taxpayer, I get this notice, and it says it was zero, it was nothing. Maybe it should have been 240, but isn't the error, shouldn't that have been, really put the taxpayer on more notice? It was nothing, and it's now 165,000 something versus 240. I mean, wasn't the mistake here something that should have triggered a bigger reaction? I've thought of that, too. What would a reasonable person think when they saw that? And I can't come up with any kind of logical conclusion of what I would think if I saw a zero there. Maybe I thought, well, I'm buying this land. It starts from scratch. I mean, I don't know. That would be a question of fact, but the thing is, they didn't do what they were supposed to do. They didn't put a number in there. If they had put any number other than zero, if they had put $20 or $230, would your argument be the same? No. All right. So the focus of your argument is it was zero instead of six. That's not the only point, but as to that specific point, that's correct. I think if they would have put the prior assessed value for the whole farm before it was sold, which was like $2,500, then a taxpayer could look at that and say, oh, 2,500, 165,000? Make a calculation. This is going up 6,000% for some reason. Well, not only that, but what about if it was assessed before as farmland and they put a number in the second line? That's true, too. That's another good point. All of these categories, when I read it, it all looks like it's farm of some sort or another. The first one says land, lot, or farmhomes site. The next one says farmland. The next one, building. The next one, farm buildings. It looks like it's all farm. If I got this, I would not think that they're assessing this at one-third of fair market value. In fact, one of the questions earlier was, how come this doesn't say that it's reclassified? It does not say that, and the brief is a little bit misleading because the appellant's brief says we knew this, that it was reclassified. We knew it when we filed the complaint. But that's not the basis of your tax objection that the court allowed summary judgment on. He never got to the issue of the reclassification. Correct, but what I'm saying is the notice did not tell us that it was reclassified. We found out it was reclassified when we got the tax bill, and if you look at the tax bill, which is one of the exhibits, they have a code on there. It says 0020. If you investigate that, then you find out it's other land or non-farm. But by the time we got the tax bill, our right to go to the Board of Review had already expired. Getting back to the notice, is there anything other than that amount that was zero that you think should have been something that was defective about the notice? Well, it could have been what the prior year was for the entire farm. Another logical way of doing it is exactly what the trial judge said. I think his words were something like, it's not that great of a task to prorate this or extrapolate this and come up with a number. Frankly, the only thing that changed in this case when they reassessed this was the name of the owner, their zip code, and the fact that they bought like three-fourths of the land. That's it. And they went and changed all of this. But is that the only thing in the notice that wasn't up to the statute? Well, I think there's another part of the statute that we can talk about. You know, the statute was changed about four months after this case was filed. Any new notices, like for 2010, would not only have to show this, but they would have to specifically tell the taxpayer the percentage change. That was amended. And I think that goes to show the legislature's intent to notify taxpayers when these things are happening. But it wasn't a requirement. It wasn't a requirement at this time, but the same logic goes. If you have two numbers, you can compare and you can say, oh, it went up this percent. Does the notice requirement require them to advise the taxpayer if they're reclassifying his property? Not just reassessing, but reclassifying. No, I don't think the statute requires that. I think there is one other part of the statute, though, that says where practicable, you're to inform the taxpayer of an increased assessment. Now, I understand that's discretionary language. It says we're practicable, but why wouldn't it be? If you're raising somebody's assessment over $6,000, why couldn't you say, we have changed the classification on this. That's why it's going up this much. They didn't do that. They weren't required to. They weren't required to, but as I said before, they can tell the taxpayer why it's going up. And they didn't do it, and we don't have any knowledge of why they didn't do that. It just seems to me like an anomaly that you'd be required to tell them about a reassessment, which may have a minimal impact on your tax bill, when they don't have to notify the taxpayer of a reclassification, which, as here, can have an astronomical difference in your tax bill. When we're talking about giving people notice and due process and those kind of things, I'm having trouble wrapping my brain around the concept that you just notify them of a reassessment, but not of a reclassification. The only answer I can give you is that they do what the statute requires or they don't do what the statute requires. The statute might not make sense. If we had seen the way this was going to change, then we could have went to the Board of Review and asked those questions. Why did you change this classification? And you could have argued that. But in this case, my clients weren't put on notice. It didn't hit home. Bells did not go off, and I don't think most reasonable people would when they see this, particularly when you read this whole thing. I think the trial judge says, I've never been able to understand these notices. And then when you omit information, it makes it even more confusing for people to exercise their rights, which ties into one of your questions, Judge, was, well, why couldn't we remand this, then have a hearing, determine what the classification is? But that's not what the law says. There's several cases that say if there was defective notice, the tax is invalid. I don't think there's any question about that. So there's no reason to remand it for a hearing. They don't get a second bite at the apple. If they lose here, then we have to go to a hearing. But let's just assume I don't agree with you, and I think the amount zero is an amount. I mean, whether it went from zero to $165,000 or $240,000 to $165,000, I think that should have put them on notice. But, you know, we have to hash it out later as a panel. So let's assume for the sake of argument that this notice was valid. That leaves the issue of the classification that I think from the questions my respective colleagues are asking bothers all of us. So why can't the trial court decide that issue that you raised in your tax objection? He didn't. He didn't get there. He just said the notice was defective, the tax is void. That's right. That's what the cases clearly say. In fact, one of the cases cited by the appellant is one that came out of this district. It's Weber v. White Eagle Golf Club. And in that case, there was no notice. But there was notice here. You're saying the information is the notice. Oh, yeah, I understand that. There's a distinction there. But in this case, there was no notice, and this court remanded it and said, just for purposes of determining the refund, not to have a hearing. And I think that follows with other Supreme Court cases. Try to humor me if you can. What was wrong with the way it was reclassified? That's what's so shocking here. We never got to that. We were in the middle of discovery when they filed a motion to dismiss our case. And so we turned around after briefing the law and said, we're entitled to summary judgment as a matter of law based on the very same cases. Those Supreme Court cases, Foxworthy and Jennings, say that tax or any increased assessment as a result of a defective notice is all void. It's illegal. But just to clarify something, if, in fact, we find this notice valid, then you're out of court, right?  Because we had to pay the money up front. We had to pay the tax within a certain amount of time, the $15,000. Then we had to file our tax objection complaint within a certain amount of time. That was our only remedy in this case, and we did that. I just want to clarify that if the notice is valid, then there's no remand. There's no nothing. It's the end of the day. It's reverse the trial court and dismiss it from all the jurisdiction, right? How do you distinguish Mathers versus County of Mason where there was a notice sent, but it was maybe incomplete or defective? The Fourth District affirmed. Which case are we talking about? It's Mathers versus County of Mason. Mathers is an interesting case. It's my home county, so I'm kind of familiar with it, although I think I just got out of law school when I started. But there's some interesting language in Mathers that's italicized. And the appellate court, the Fourth District appellate court, made a comment, said the plaintiff or taxpayer did not phrase this as a defective notice case. And just like raising the question, why didn't you? Because it would be a whole different kind of case if they had. That's what I drew from that. Okay. That's fair. Thank you. I don't know where I was. I don't know how you put it. I think I'd be better off just answering questions. But if I could go back to you. If there's any questions about the fact that we don't have to exhaust our administrative remedy, People versus Jennings is one of the first cases, the only Supreme Court case that talked about that. It said a failure to publish like a failure to give notice of a change in assessment relates to the remedy itself and the rule requiring the taxpayer to first seek relief before the Board of Review has no application. And that was followed in your case, the Weber versus White Eagle Golf Club. Yes, sir. Thank you. There were a couple of points that were in the brief of the appellants. I call them get-out-of-jail cards or something. There were a couple of statutes that were cited. It was 2425 and 21185. There were two cases cited, Golf Trust versus Soak and Cotter & Company. Neither one of those cases involved 24-25. Cotter & Company is clearly distinguishable if you read the case. I won't go into all the details of it. But there was no change in the assessment. Also, no notice was required. So that case does not stand for the proposition that it was cited for in the appellant's brief. The Golf Trust case only involved 21185. And there was notice to the taxpayer of the increased assessment. The only difference was they didn't tell them how much of that increased assessment was attributable to improvements. So the taxpayer knew exactly what was going on. Just as we would have known if they would have put down $2,500 as the prior assessment. People versus Abraham I cited addresses both of those statutes. And I think you'll see that the court rejected that argument, that the notice is a jurisdictional thing. If you don't do the notice correct, you have no jurisdiction. There was one other distinction that counsel made about my two Supreme Court cases. They said, well, they're only publication notices. I would suggest that an error in an actual notice would be a more egregious error than one with publication. I think that's not a valid distinction to rule out two Supreme Court cases. Thank you. Oh, I have one more question. If you will indulge me. Are we creating new law if we require some amount to be shown as an assessment for a newly created parcel? That's part of a larger parcel, a smaller? I'm not sure I understand the question. Does the case law provide that when a smaller parcel is purchased and is given a new number, that the notice has to include some amount? No, there's no case law on that. In fact, Mr. Shearer and I were talking right before we came in here. It's ironic or interesting that we don't have any cases exactly on point here. So my question is, are we creating something that if we agree with you that the amount should have been something? There is no case out there that says that right now. No, and I think that goes to what is the court's function and what is the bureaucrat's function. The people in the Fulton County Assessment Office, every day their job is to determine value for property. It wouldn't be that hard of a task for people to do that all the time to assign some value. I don't think you have to tell them to do that. It should be their duty to do that. And I think the legislature is probably reemphasizing that to them by this recent amendment. Tell the taxpayer what's going on so they can exercise their rights. Thank you. Thank you. Thank you. Mr. Ushir, some rebuttal? Justice Wright, you're absolutely correct. You would be creating new law. Even though that may be a logical way to approach it, sometimes the logical way isn't the legal way to do it. The property tax code says prior year's assessment information. A new tax parcel is created. There was no prior year assessment information to apply to that particular. I'm sorry. So it's kind of like trying to have it both ways. So you're saying this is a new parcel and it's never been assessed before. And yet you say the reason for the change is a reassessment. Well, if it's never been assessed before, this is not a reassessment. Fair? Well, I understand what you're saying. This is an initial assessment. This is an initial assessment. Section 12-30, the notice provision that we're all hung up on here, it talks about changes in assessment, changes to an existing property. I've been looking and I don't find a specific provision regarding a brand-new tax parcel. I mean, there are responsibilities set forth in the property tax code that says if there's a new tax parcel created, if there's a subdivision of land, you're supposed to have PINs that identify parcels for tax purposes. So the provisions kind of dance around the subject and don't really contemplate giving specific notice when the new parcel is created. But I think everyone would agree that that needs to be done. If there's a new tax parcel created, they're going to get a bill. This is the first time that they're getting taxed on this particularly described property under the new PIN. Well, but you know, here's the problem. This goes to where I'm having some due process issues. Maybe you can help me with that. And that is that if a developer goes out and buys a piece of land and is going to put a subdivision, a shopping mall, he knows it's going to get – the taxes are going up and are going up big time, right? Now you take somebody, and I think these folks are from Pennsylvania, but it doesn't matter where they're from, and they go out and they buy the big chunk of a piece of farm ground. There'd be nothing in my common sense that if I did that, that I would expect it to be reclassified. And, you know, if I was just buying this big, you know, 160 acres of rural ground, that it was going to – by virtue of my buying it, it was going to get reclassified when I wasn't going to build a subdivision or it wasn't clear that that's what was going on. And so I'm having – I mean, isn't due process the core of this notice? I mean, aren't even taxpayers in Illinois entitled to due process? Right, but due process requires much less than what the property tax code requires. So if you've got to tell them they're being reassessed, which may, as was discussed, have very little impact on their wallet, but then you don't have to tell them you're going to reclassify this property, but that you're reclassifying it? Well, I think reclassification falls under the umbrella of reassessment, that it's – reassessment is a larger category that reclassification falls under. How would one look at this notice and know it's being reclassified? I mean, in other words, if I bought that ground and I get this in the mail, what in this notice would put me – would tell me, oh, they're reclassifying this to something that's going to cost me a lot more money? Well, if I get the notice and it says that prior year's assessment information is zero, I'm at least on inquiry notice. If I'm looking at the newspapers, looking at the published list of assessments, and I see that my property is assessed at $165,000-some-odd dollars and an adjacent parcel of property that I consider to be similar is assessed at $3,000, I'm going to be asking questions. The publication has never been drawn into question here. All that's been complained of in this case is a technical defect as to the form, and these are exactly – this is exactly the case to which Sections 24-25 and 21-185 are intended to apply. In Jennings, they talked about a pre-1941 law that said, in case any assessment is not published in conformity with law or is not mailed in accordance with the provisions of this act, the failure so to publish the same or mail the same shall not be considered as a valid objection to the text. Now, the Jennings court observed that the legislature had deleted that provision and supplanted it with something else that was much less broad, much narrower. Thank you. Today, we have a very similar provision in Section 24-25 that says, a failure to give any notice required by this code shall not impair or affect the validity of any assessment as finally made. Does – under the tax code – okay, so they missed the deadline. Let's suppose that you're right and the notice was valid and the taxpayer loses. Can they – this tax, this classification then goes on. Can they attack this classification the next year? My understanding is they already have. I mean, we haven't – this isn't going to appear in the record. We didn't get that far, but my understanding is that in the subsequent year, they applied for – enrolled it in the forestry management program, so they received a preferential assessment for something other than farmland the following year. But regardless whether they did or they didn't, there's no bar. In other words, you missed it this one time and you're stuck with that classification. Correct. It's just an absent change of enrolling in something with just saying, hey, folks, you blew it. This is still farmland. The John Deeres are running up and down. Correct. We're just looking at one tax year at a time. We're here only about the 2009 tax year. What happened in 2010 is mutually exclusive. I mean, they had the ability to raise whatever new arguments or concerns they had in 2010. The same is true – will be true this year for 2011, next year for 2012. One more question. Does the statute that was applicable to the notice that went out in late 2009 require disclosure of whether it was an initial assessment, a reassessment, or a reclassification? No. That's not part of the notice? That's not. Pursuant to statute. Now you have to show a percentage increase. It talks about where practicable a reason for the change. All right. Where practicable. It's not mandatory. It's not explicitly required. If you can do it, please do it. Is that under 30 subsection B, 1230 subsection B? Memory serves, yes. All right. Thank you. Well, where practicable means do it unless it's impracticable, doesn't it? You know what I mean? I guess when you look at if it's still where practicable, well, why didn't you do this? Well, it wasn't practicable. Well, why not? In other words, where practicable is, well, it's not an order. It's just saying if you can. I think they did here. I mean, that doesn't mean do it if you feel like it, does it? Correct. Strong encouragement, sure. At a minimum, strong encouragement. Okay. All right. Thank you very much. Okay. Well, great. Thank you both for your arguments here today on this case. The matter will be taken under advisement. A written disposition will be issued. Let's see where we're at.